**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **JEFFERY NELSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 19-cv-3110** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on Petitioner Jeffery Nelson's Motion to Vacate, Set Aside, or Correct Sentence in Accordance with 28 U.S.C. § 2255 (d/e 3). Mr. Nelson claims that his trial counsel provided ineffective assistance by failing to object to a sentencing enhancement.

Mr. Nelson's sentencing enhancement was improper. But because he cannot show that his counsel was ineffective, his Motion is DENIED.

## I.  BACKGROUND

### A.    Mr. Nelson's Underlying Criminal Case.

The facts presented in Mr. Nelson's motion follow a well-worn
pattern.  On June 7, 2017, a federal grand jury indicted him on
one count of distributing 28 grams or more of crack cocaine, in
violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  See United
States v. Nelson ("Nelson"), Case No. 17-cr-30033 (C.D. Ill.), d/e 2.
He was arrested the following week and ordered detained pending
trial.  See id., Minute Entry dated June 19, 2017.

This was not Mr. Nelson's first drug charge.  So, as was the
Government's regular practice with repeat drug offenders, the
Government filed an Information Charging Prior Offenses on
October 3, 2017.  See Nelson, d/e 16.  Pursuant to 21 U.S.C.
§ 851(a)(1), the Information gave notice of a prior conviction that
qualified Mr. Nelson for a sentencing enhancement under 21
U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  Id.  The prior in question was
a 2002 Illinois state-court conviction for the "manufacture [or]
delivery of a controlled substance, [a] Class 1 felony."  See id.
(citing State of Illinois v. Jeffery Nelson, Sangamon Cty. Case No.
2002-CF-115).  The Government did not specify which of Illinois'

drug statutes Mr. Nelson had violated.  See id.  Instead, the

Government simply asserted that the conviction was an eligible

predicate.  See id.

Mr. Nelson pleaded guilty a few weeks later.  See id., Minute

Entry dated October 24, 2017.  His plea agreement was governed

by Federal Rules of Criminal Procedure 11(c)(1)(A) and (B).  Id., d/e

25.  The agreement provided, among other concessions, that the

Government would move at sentencing for a two-level reduction in

offense level for acceptance of responsibility.  Id., ¶ 11.  The

Government also promised to recommend a sentence "at the low-

end of the applicable Sentencing Guideline range, as determined

by the Court."  Id., ¶ 16.  But the Government further warned, in a

section entitled "Potential Penalties," that his conviction might

result in a term of incarceration of "[n]ot less than 10 years and up

to life imprisonment."  Id., ¶ 8.

Mr. Nelson also made several concessions.  He agreed to

waive his right of appeal, except on grounds of involuntariness or

ineffective assistance of counsel.  Id., ¶ 18.  And he waived his

right to collaterally attack his sentence (under 28 U.S.C. § 2255)

except through a claim of ineffective assistance of counsel.  Id., ¶ 19.

Before sentencing, the U.S. Probation Office prepared a revised Presentence Investigation Report (PSR).  Id., d/e 47.  The PSR calculated Mr. Nelson's total offense level as 21, id., ¶ 29, and his criminal history category as VI, id., ¶ 52.  By that calculation, Mr. Nelson's advisory Sentencing Guidelines range was 77 months to 96 months' imprisonment; however, his sentencing enhancement increased his Guidelines term to the statutory minimum of 120 months' imprisonment.  Id., ¶ 98.

The PSR also provided further detail regarding Mr. Nelson's 2002 conviction in the Circuit Court of Sangamon County, Case No. 2002-CF-115.  Id., ¶ 38.  The PSR reported that Mr. Nelson was charged with and convicted of one count of possessing with intent to deliver more than one gram but less than fifteen grams of a substance containing cocaine.  Id.

Mr. Nelson was sentenced on April 9, 2018.  Before his sentencing hearing, Mr. Quivey filed a Commentary on Sentencing Factors in which he recommended a sentence of 120 months' imprisonment, to be followed by eight years' supervised release.

Id., d/e 38.  He attached as exhibits letters of support from Mr.
Nelson's mother, his former wife, his aunt, and his Bible study
leaders.  Id.

At sentencing, the Court asked Mr. Nelson to "affirm or deny"
whether he had been "convicted of manufacture/delivery of a
controlled substance in Sangamon County, case number 2002-CF-
115."  Mr. Nelson said that he so "confirm[ed]."  The Court then
asked whether he understood that he could not challenge the
existence of the prior conviction—on appeal or in a post-conviction
proceeding—if he did not challenge the existence of a prior
conviction before sentencing.  He again affirmed that he did
understand.

The Court found that Mr. Nelson's total offense level under
the United States Sentencing Guidelines was 21 and that the
applicable Criminal History Category was Roman numeral VI,
resulting in a Guidelines sentencing range of 77 to 96 months'
imprisonment.  The Court further found that the applicable
statutory minimum term of imprisonment was ten years and that
the applicable statutory minimum term of supervised release was
eight years.  The Court then imposed a sentence in keeping with

those statutory minimums: 120 months' imprisonment, to be followed by an eight-year term of supervised release.  See id., d/e 44.

Mr. Nelson now moves for relief from that sentence.  Since his petition rests on a claim of ineffective assistance, it is worth noting his rotating cast of counsel.  First, at his initial appearance, United States Magistrate Judge Tom Schanzle-Haskins found Mr. Nelson indigent and appointed as his attorney Johanes Maliza of the Office of the Federal Public Defender.  See id., Minute Entry dated June 19, 2017.  Two days later, Mr. Nelson retained private counsel, Mark Wykoff, in Mr. Maliza's stead.  See id., Minute Entry dated June 19, 2017.  Finally, after his private counsel discovered a likely conflict, Mr. Nelson again was appointed a federal defender—this time A.F.P.D. Douglas Quivey.  See id., Text Order dated August 25, 2017.  Mr. Quivey's representation concluded at Mr. Nelson's April 2018 sentencing.

In December 2018, a few months after Mr. Nelson's sentencing, Mr. Quivey left the Federal Public Defender's office and accepted a position as an Assistant U.S. Attorney, also in the Central District.  From March 2021 through December 2021, Mr.

Quivey served as the Acting U.S. Attorney for the Central District of Illinois.  He remains an Assistant U.S. Attorney in this district.

## B.    Mr. Nelson's § 2255 Motion.

On April 25, 2019, Mr. Nelson filed this pro se Motion to Vacate, Set Aside, or Correct Sentence in Accordance with 28 U.S.C. § 2255 (d/e 3).[1]  On July 1, 2021, this Court ordered an evidentiary hearing on Mr. Nelson's claims and appointed counsel to represent him under the Criminal Justice Act.  See Order and Opinion, d/e 24; Text Order dated July 1, 2021.

In Mr. Nelson's § 2255 motion and reply brief, he argues that he received ineffective assistance of counsel during the negotiation of his plea agreement and at sentencing.  By Mr. Nelson's account, Mr. Quivey rendered constitutionally ineffective assistance when he did not argue that Mr. Nelson's prior conviction for possession of cocaine with intent to distribute could not serve as the basis for a sentencing enhancement under 21 U.S.C. § 851.  Instead, Mr. Nelson argues, Mr. Quivey should have objected to the application

---

[1] Mr. Nelson (or a purported agent) filed two § 2255 motions on April 25.  See d/e 1; d/e 3.  At his request, the Court struck the first.  See Text Order dated December 2, 2020.  This order therefore addresses only the second.

of the § 851 sentencing enhancement because the Illinois statute under which Mr. Nelson was convicted applies to a categorically broader class of "cocaine" than does its federal analog.

The Government responded to Mr. Nelson's pro se § 2255 motion on February 26, 2021.[2]  See d/e 20.  The Government contends that Mr. Nelson's § 2255 motion is barred by the collateral-review waiver in his 2017 plea agreement and that Mr. Quivey's performance was not constitutionally ineffective.

When the Government filed its response, Mr. Quivey was employed by the U.S. Attorney's Office for the Central District of Illinois.  He was not yet its Acting U.S. Attorney, nor was he assigned to Mr. Nelson's habeas case.  Nevertheless, his transition from public defender to prosecutor created a potential conflict of interest: Mr. Quivey was both a key witness in (and indeed the subject of) Mr. Nelson's § 2255 case and the head of the Office responsible for opposing it.  To address this issue, on October 7,

_____

[2] The Government also responded to Mr. Nelson's now-struck petition.  See d/e 10.  This order addresses only the Government's second filing, in which it responded to the motion now before the Court.

2021, the Attorney General appointed a Special U.S. Attorney to oppose Mr. Nelson's motion.

On January 21, 2022, an evidentiary hearing was held on Mr. Nelson's motion. At the evidentiary hearing, Mr. Nelson was represented by appointed counsel and the Government was represented by Special U.S. Attorney Ranley R. Killian. Mr. Quivey was called to testify as a witness.

## II. LEGAL STANDARD

18 U.S.C. § 2255 is the "the federal prisoner's substitute for habeas corpus." <u>Brown v. Rios</u>, 696 F.3d 638, 640 (7th Cir. 2012). Under § 2255, a federal prisoner may request that his sentence be vacated, set aside, or corrected if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Relief under § 2255 is an extraordinary remedy. A § 2255 petitioner has already had "an opportunity for full process." <u>Almonacid v. United States</u>, 476 F.3d 518, 521 (7th Cir. 2007). § 2255 relief, therefore, is "appropriate only for an error of law that

is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (cleaned up). In considering a § 2255 motion, the Court reviews and draws inferences from the evidence in the light most favorable to the Government. Carnine v. United States, 974 F.3d 924, 928 (7th Cir. 1992).

A § 2255 motion is not a substitute for a direct appeal. E.g., Doe v. United States, 51 F.3d 693, 698 (7th Cir. 1995). Nor may federal prisoners use § 2255 as a vehicle to circumvent decisions made by the appellate court on direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Doe, 51 F.3d at 698.

Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other

grounds by <u>Castellanos v. United States</u>, 26 F.3d 717, 710–20 (7th Cir. 1994).  However, "it is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually . . . involve evidence outside the record."  <u>Galbraith v. United States</u>, 313 F.3d 1001, 1007 (7th Cir. 2002).

## III. ANALYSIS

Recently, this Court considered a materially similar set of facts and questions in <u>Leonard Williams v. United States</u>, No. 19-cv-3226 (C.D. Ill. Oct. 25, 2021).  Both Mr. Williams and Mr. Nelson were represented by Douglas Quivey during 2017 and 2018.  Both men received § 851 enhancements for prior convictions under the same Illinois statute.  And both men argued that Mr. Quivey denied them effective assistance by failing to challenge, on categorical-overbreadth grounds, the use of those convictions as § 851 predicates.  Mr. Williams' petition was denied.  <u>See</u> <u>id.</u>  While Mr. Nelson's petition is distinguishable in several respects, the result here is the same.

### A. Mr. Nelson Did Not Waive His Right to Challenge His Sentence Based on Ineffective Assistance of Counsel.

The Government's briefing raises a threshold question: whether Mr. Nelson waived his right of collateral attack on grounds of ineffective assistance.  <u>See</u> Resp., d/e 20, at 10.  He did not.

Since the right to collaterally attack a conviction or sentence is a statutory creation, that right "can be waived."  <u>United States v. Wilkozek</u>, 822 F.3d 364, 367 (7th Cir. 2016).  It is also "well-settled that waivers of direct and collateral review in plea agreements are generally enforceable."  <u>Hurlow v. United States</u>, 726 F.3d 958, 964 (7th Cir. 2013); <u>see also</u> <u>Oliver v. United States</u>, 951 F.3d 841, 846 (7th Cir. 2020) ("Finality matters in plea agreements, especially when the parties have negotiated for it expressly.").  In entering his plea agreement, Mr. Nelson foreclosed most avenues to collateral relief.  <u>See</u> <u>Nelson</u>, d/e 25, ¶¶ 20, 21.  But he did not foreclose all of them.

Here, Mr. Nelson is not pursuing a stand-alone claim that the application of the § 851 sentencing enhancement was erroneous. Rather, his claim is that he received ineffective assistance of counsel before and during his sentencing hearing.  This claim was expressly excluded from the collateral attack waiver.  <u>Id.</u> ¶ 20 ("The waiver in this paragraph does not apply to a claim of ineffective

assistance of counsel."); see Hurlow, 726 F.3d at 965 ("A direct or
collateral review waiver does not bar a challenge regarding the
validity of a plea agreement (and necessarily the waiver it contains)
on grounds of ineffective assistance of counsel; [defendant] need
not have alleged that his counsel was ineffective in the negotiation
of the waiver provision of his plea agreement specifically.").
Accordingly, the Court finds that Mr. Nelson did not waive his right
to bring a collateral claim of ineffective assistance of counsel.

**B.  Mr. Nelson's Sentence Was Enhanced in Error.**

When Mr. Nelson was sentenced, § 841(b)(1)(B)(iii) provided
for a minimum sentence of five years' imprisonment and a
four-year term of supervised release for any person who possessed
more than 28 grams of crack cocaine with intent to distribute.
Adding a prior "felony drug offense," however, increased the
statutory minimum sentence to ten years' imprisonment with an
eight-year mandatory minimum term of supervised release.

Every party involved—the Government, Mr. Quivey, the U.S.
Probation Office, and the Court—assumed that his 2002 conviction

under was a predicate "felony drug offense"[3] that triggered this sentencing enhancement.  At his 2018 sentencing hearing, the Court found that he had a prior felony drug offense and, therefore, that the enhanced statutory minimums applied.  Two subsequent decisions have made clear that these findings were erroneous.

A few months after Mr. Nelson was sentenced, the Seventh Circuit joined several of its sister circuits in holding that the categorical approach controls whether a state law drug conviction is a "felony drug offense."  United States v. Elder, 900 F.3d 491, 501 (7th Cir. 2018); see also Shular v. United States, 140 S. Ct. 779 (2020).  "The categorical approach disregards the facts underlying a prior conviction, focusing instead on the statutory definition of the offense."  United States v. Edwards, 836 F.3d 831, 834–35 (7th Cir. 2016).  In applying the categorical approach, a court must compare the elements of the state statute to the conduct proscribed by the federal definition.  United States v. Franklin, 895 F.3d 954, 958 (7th Cir. 2018).  If the state statutory

---

[3] The current version of 21 U.S.C. § 841(b)(1)(B) requires a "serious drug felony" to trigger a sentencing enhancement.  At the time of Mr. Nelson's sentencing, only a "felony drug offense," as defined in 21 U.S.C. § 802(44), was needed.

definition is the same as or narrower than the federal definition,
the state offense can be treated as a predicate offense.  See
Edwards, 836 F.3d at 835.  But if "state law defines the offense
more broadly than the federal definition, the prior conviction
doesn't qualify as a [predicate offense]," regardless of the
defendant's actual conduct.  Id. at 833.

Two years after deciding Elder, in United States v. Ruth, 966
F.3d 642 (7th Cir. 2020), the Seventh Circuit undertook a
categorical analysis of the cocaine statute underlying Mr. Nelson's
predicate conviction.  It concluded that Illinois's definition of
"cocaine," which includes positional isomers of cocaine, was
broader than the federal definition of "cocaine," which does not.
See id. at 650.  The Ruth court held that this discrepancy rendered
720 ILCS 570/401(c)(2) "overbroad" as compared to its federal
analog, that the violation was an improper predicate "felony drug
offense" under 21 U.S.C. § 841(b)(1)(C), and that the district court
erred in using it to enhance the defendant's sentence.  Id.

Like the defendant in Ruth, Mr. Nelson was convicted of
cocaine trafficking under ILCS 570/401.  Ruth's holding therefore
applies to his state-law conviction.  And like the district court in

<u>Ruth</u>, this Court erred when it applied a sentencing enhancement based on that conviction.

But Mr. Nelson faces a further barrier to relief. In <u>Ruth</u>, the defendant objected to and raised an overbreadth argument against the enhancement at his sentencing, therefore preserving the argument for appeal. <u>See</u> <u>id.</u> at 644–45. By contrast, Mr. Nelson agreed in his plea agreement that the enhancement applied. He did so again at his sentencing hearing. He did not, and could not, appeal his sentence. And he waived his right to collaterally attack his sentence, except through a claim of ineffective assistance of counsel.

Therefore, having shown that he was sentenced in error, Mr. Nelson must also prove that this resulted from a performance by Mr. Quivey that "fell below an objective standard of reasonableness when measured against 'prevailing professional norms.'" <u>Osagiede v. United States</u>, 543 F.3d 399, 408 (7th Cir. 2008) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984)).

**C.   Mr. Quivey's performance was constitutionally adequate.**

To succeed on a claim of ineffective assistance, a § 2255 petitioner must show: (1) that his attorney's performance fell below

an objective standard of reasonableness; and (2) that he suffered

prejudice as a result.  <u>Wyatt v. United States</u>, 574 F.3d 455, 457–

58 (7th Cir. 2009) (citing <u>Strickland</u>, 466 U.S. at 687–88).  The first

prong is known as the "performance" prong, and the second is

known as the "prejudice" prong.  <u>Id.</u>  Failure to prove either one is

fatal to a claim of ineffective assistance.  <u>Chichakly v. United

States</u>, 926 F.2d 624, 630 (7th Cir. 1991); <u>see also</u> <u>Strickland</u>, 466

U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on

the ground of lack of sufficient prejudice . . . that course should be

followed.").

To satisfy the performance prong, a petitioner must overcome

the "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." <u>Strickland</u>, 466

U.S. at 689.  He must set out the "specific acts or omissions of

counsel that [he] believes constituted ineffective assistance."

<u>Wyatt</u>, 574 F.3d at 458.  The Court will then determine whether

"such acts or omissions fall outside the wide range of

professionally competent assistance."  <u>Id.</u>

Next, to satisfy the prejudice prong, a petitioner must show

"that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome." Id.

Ordinarily, the Court's scrutiny of counsel's performance is highly deferential.  Rodriguez v. United States, 286 F.3d 972, 983 (7th Cir. 2002).  But recent circuit precedent may have lessened the degree of deference owed.  In Bridges v. United States, 991 F.3d 793 (7th Cir. 2021), the Seventh Circuit held that while "[d]efense attorneys . . .  are generally not obliged to anticipate changes in the law," there still are "some circumstances" under which counsel "may be obliged to make, or at least to evaluate, an argument that is sufficiently foreshadowed in existing case law." Id. at 804.

To his credit, Mr. Nelson presented this Court with the argument that prevailed in Ruth several months before it was filed in the Seventh Circuit.  But he did so with the benefit of hindsight: that is, only after the Seventh Circuit formally adopted the categorical approach in Elder.  Mr. Quivey, by contrast, enjoyed no such benefit.  And the evidence presented shows Mr. Quivey acted

in accord with generally accepted best practices for defense counsel.  Mr. Nelson cannot satisfy <u>Strickland</u>'s performance prong, and he therefore cannot satisfy <u>Strickland</u>.

First, Mr. Nelson has not directed the Court to any instance before April 2018 in which a defense attorney did what he claims Mr. Quivey failed to do.  Nor has Mr. Nelson shown that, to provide effective assistance, Mr. Quivey was required to devise an overbreadth argument essentially out of whole cloth.

Here, the relevant federal definition of "cocaine" and the relevant Illinois definition of "cocaine" have both remained unchanged since the 1980s.  <u>See</u> Pub. L. No. 98-473 § 507(b) (1984); Act of Sept. 8, 1985, § 1, 1985 Ill. Laws 2288, 2292–93. The change in the law that would occur in 2020 was the product of a new judicial approach to the interpretation of the relevant statutes, rather than changes in the statutes themselves, and there is no reason to suppose that Mr. Quivey was better positioned to predict the change than any of the hundreds of diligent and competent defense attorneys who concluded that Illinois cocaine trafficking convictions were "felony drug offenses" under § 841(b)(1)(B) in prior years.

As in <u>Leonard Williams</u>, Mr. Quivey should have "been on the lookout for categorical approach problems," <u>see</u> <u>Bridges</u>, 991 F.3d at 803.  But even if he had been there is no reason to suppose that he would have been able to invent the complex, novel, and counterintuitive "isomers" argument that eventually prevailed in <u>Ruth</u>.  A somewhat analogous argument had been successful in the Ninth Circuit in <u>Lorenzo v. Sessions</u>, 902 F.3d 930 (9th Cir., August 29, 2018) <u>opinion withdrawn on denial of reh'g sub nom. Lorenzo v. Whitaker</u>, 913 F.3d 930 (9th Cir. 2019), <u>and opinion superseded on denial of reh'g sub nom.</u> Lorenzo v. Whitaker, 752 F. App'x 482 (9th Cir. 2019).  However, <u>Lorenzo</u> involved a comparison between statutes not at issue here and arguments about isomers of methamphetamine rather than isomers of cocaine.  <u>See</u> <u>id.</u> at 934–38.  Anticipating that the Seventh Circuit would adopt the isomer overbreadth argument and apply it to the Illinois definition of "cocaine" essentially would have required Mr. Quivey to anticipate a change in the law.

As the Court noted in <u>Leonard Williams</u>, the Federal Public Defender sent an e-mail to the mailing list FPD_ILC@yahoogroups.com on August 17, 2018, which

summarized the holding in Elder and reminded defense counsel to
"Remember to Check those Prior Convictions!"  Mr. Quivey would
have received this e-mail and therefore been aware of the Elder
decision.  That decision involved an Arizona statute that
criminalized conduct relating to "dangerous drug[s]" and was
overbroad because it defined "dangerous drugs" to include
propylhexedrine and scopolamine, neither of which were included
in the corresponding federal statute.  See Elder, 900 F.3d at 495–
96.  To realize that the statute under which Mr. Williams had been
convicted of cocaine trafficking was overbroad, Mr. Quivey would
have had to combine the categorical approach followed in Elder
with a modified version of the methamphetamine isomers
argument that the Ninth Circuit accepted in Lorenzo.  This is not
something that defense attorneys typically are required to do.  See
Bridges, 991 F.3d at 804.

Indeed, Bridges is not to the contrary.  There, the need to
investigate whether a viable categorical approach argument existed
was "especially pronounced": the relevant federal definition had
been amended and made narrower months before the offense was
committed.  Id. at 805.  Not so here.  Moreover, the argument that

Bridges' defense counsel failed to raise in the district court had already been successfully deployed in a directly on-point published decision out of the Tenth Circuit months before the defendant signed his plea agreement; defense counsel would have had only to discover the argument through research, not to invent the argument himself.  Id.  But there was no such directly on-point decision—in any jurisdiction—waiting for Mr. Quivey to discover.

In short, many, if not all, of the elements of a winning legal argument regarding the overbreadth of Illinois's definition of "cocaine" were available at the time of Mr. Nelson's sentencing. Even still, as this Court noted in Leonard Williams, putting them all together for the first time would have required an extraordinary display of imagination, scientific knowledge, and legal acumen.  A defense attorney need not provide extraordinary representation to be effective.  Nor is a defense attorney representing a client before a district court expected to devote the same amount of time to researching ingenious new defenses that a law professor or an appellate defense attorney might.  It would not be realistic to demand that trial counsel anticipate the Seventh Circuit's holding

in <u>Ruth</u> without access to any of the briefing or expert scientific testimony on which that court relied.

Second, the evidence before the Court regarding Mr. Quivey's performance suggests that it was exemplary. The sentencing commentary filed by Mr. Quivey on Mr. Nelson's behalf was diligently and intelligently prepared. His performance at the sentencing hearing was exemplary; in fact, he took considerable and effective pains to endorse his client's character and moral rectitude. Moreover, the strategy that Mr. Quivey chose to pursue—relying on character testimony and emphasizing the nonviolent nature of Mr. Nelson's criminal history—secured for his client a statutory minimum sentence.

To be constitutionally effective, a defense attorney need only deliver a performance that satisfies "an objective standard of reasonableness when measured against prevailing professional norms." <u>Wyatt</u>, 574 F.3d at 457–58 (cleaned up). The available evidence shows that Mr. Quivey's work accorded with those norms.

The Court finds that Mr. Quivey's performance was, at the very least, constitutionally adequate. And because Mr. Quivey

provided adequate representation, Mr. Nelson's § 2255 motion must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to a petitioner.  To obtain a certificate of appealability, Mr. Nelson must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  For such a showing to exist, reasonable jurists must be able to "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (cleaned up).  Since Mr. Nelson has not made a substantial showing of the denial of a constitutional right, the Court declines to issue him a certificate of appealability.

## V. CONCLUSION

For these reasons, Petitioner Jeffery Nelson's Motion to Vacate, Set Aside, or Correct Sentence in Accordance with 28 U.S.C. § 2255 (d/e 3) is DENIED.  Any pending motions in this

matter are DENIED as MOOT, any pending deadlines are

TERMINATED, and any scheduled settings are VACATED.  This

case is CLOSED.

**ENTER:  February 2, 2022**

**FOR THE COURT:**

                              **s/*Sue E. Myerscough***
                              **SUE E. MYERSCOUGH**
                    **UNITED STATES DISTRICT JUDGE**